The last will of Annie Ratti, dated April 6th, 1935, and the codicil dated May 15th, 1936, are attacked on the ground that testatrix was insane. Three other testaments of Mrs. Ratti have been laid before the court, made respectively in 1924, 1930 and 1933.
The fourth will, the one which was admitted to probate, was drawn by Mr. Joseph J. Turek. By its terms, $300 is given to a nephew in Czecho-Slovakia, $3,000 to the church of Gabalotov, $1,000 each to the poor house at Kosici, the bishop of Kosici for the poor and the beggarman of the cathedral church, and to St. Hedwig's Church in Elizabeth, and $1,200 is given to Rose Lesin, widow; the residue to Mrs. Ratti's executors to be distributed one-third to the owners of the home or institution in which she shall die and the balance among such charitable institutions of Elizabeth as they chose. The executors are Mr. Turek, Mrs. Lesin, Katherine Zebro and John Dudek.
The codicil, dated May 15th, 1936, was drawn by Mr. Raymond V. Kopnicki. It is concerned solely with Mrs. *Page 16 
Ratti's burial. In the first paragraph, she gives to Stanley Sackowicz, undertaker, $1,067 for preparing and shipping her body to Czecho-Slovakia for burial, the money to be used "according to the following schedule:"
 "Transportation of body from New York to Czecho-Slovakia ......................... $225 Consul's fee .............................. 20 Outside shipping case ..................... 200 Embalming body ............................ 40 Service ................................... 50 Hearse .................................... 25 Decorations ............................... 30 Casket .................................... 477 ______ $1,067"
The second paragraph directs that in the event war shall prevent the transportation of her body to Czecho-Slovakia, then she shall be buried in this country and the bequest to Sackowicz is reduced to $576 to be expended in accordance with another schedule shown in the codicil.
Much testimony taken in the Orphans Court has been laid before me. It shows that Mrs. Ratti, at the time of her death, April 27th, 1938, was an old woman, who had emigrated years ago from a Polish village included within the bounds of Czecho-Slovakia. Her next of kin were the nephew in the old country and a sister, Mrs. Stephen Mesko, who lives in New York. Mrs. Mesko has three children. Mrs. Ratti was shrewd in business and retained most of her faculties to the end. She was also eccentric and, despite having a considerable fortune, lived in squalor. But insanity frequently accompanies shrewdness and a person may be most eccentric without being insane. The caveators have presented evidence intended to show that for the last ten years of her life, Mrs. Ratti suffered from religious delusions and from delusions that a number of people, especially Stephen Mesko's family, would kill her if they had the opportunity.
The testimony of persons whom she met only casually or with whom she discussed only business matters and did not talk of religion or about her brother-in-law, is of little help. *Page 17 
For persons suffering from insane delusions generally talk rationally on subjects that do not touch the delusions.
The wills and the codicil demonstrate that Mrs. Ratti often changed her mind; they suggest that she was easily influenced, but undue influence is not charged. Of the five lawyers who each drew one of these instruments, all testified except Mr. John Stamler who passed away some years ago. Of course, they all considered her sane, but none of them knew her well. The persons named as executors in the wills are Mesko, Patrick Whelan, Mary Zydzik, Rose Lesin, Katherine Zebro, John Dudek and Joseph J. Turek. Mr. Turek met testatrix only on the occasion when he drew her will; Mesko, who is leading the attack on the will, testified volubly and unreliably. The other five did not testify. I especially regret not having the testimony of Mrs. Zydzik and Mrs. Lesin for they were intimate with Mrs. Ratti.
In deciding whether or not she was insane, I must consider first whether certain alleged things said and done by Mrs. Ratti were actually said and done, and then, if satisfied of the truth of the allegations, whether they indicate insanity, and lastly, what influence the mental condition had on the testamentary dispositions. I place no credence in the testimony of the brother-in-law, Stephen Mesko, and very little in that of his daughters. Of Anna Revnicki, I am skeptical.
Father Haidinger, of St. Joseph's Church, Elizabeth, first met Mrs. Ratti in 1925 when she came to a meeting at his church. She announced that she had found two discarded pictures on the refuse dumps and that a great church ought to be built in which to put the pictures; that she would get the money from Mrs. Haidinger and from Rockefeller. She attended church occasionally and twice the priest called at her home. Mrs. Ratti told Father Haidinger that she received communion from her own hand most every day. "She was always talking about God and so on. Too much religion. And I judged that she was an extremist. She had visions." "Always mixing up herself with God and His will." Also she complained about her relatives and said she tried to keep away from them because they were after her money. She was afraid of everybody, especially relatives. *Page 18 
Father Haidinger's testimony summarized above, truly presents, as I believe, the religious aspect of testatrix. So I will not refer to other testimony on that subject. We will say that she was possessed of a religious mania, but it did not affect her last will and testament. She did not cut off her sister or other relatives in order to devote her estate to building a church in which should be housed the pictures that she had found. Indeed, she left not a great deal to any church.
Bertha Mimarchenko lived in the same house with testatrix at 340 Myrtle street for a couple of years between 1932 and 1934 or 1935. "She told me that if I did not have a family, she would adopt me and my husband and when she would die, she would leave us her gold mines." She related that for a while she lived with a sister and a brother-in-law and two nieces in New York; but she left when she found out they were trying to poison her for her money. Everybody that used to joke with her she would say they were trying to kill her for her gold mines.
Mary Gomola lived in the same tenement house on Franzjoseph street with Mrs. Ratti who moved there in 1935, and continued there until her death. She told the witness that her sister and Mesko wanted to kill her; that everybody wanted her millions; she talked of her gold mines all the time. Mrs. Lesin, she said, was very good to her because she took her away from New York and saved her life when her family wanted to kill her. But about a month before her death, she was very mad at Mrs. Lesin. "She cannot wait until I die but she always comes for my money." When she was taken sick a few days before she died, Mrs. Gomola offered to call a doctor, but Mrs. Ratti said, "No, he will rob me; he wants to poison me; I don't want him."
Effie Schoffner likewise lived in the same Franzjoseph street house, but she quarrelled with Mrs. Ratti. At first Mrs. Ratti made great friends with the Schoffner child but afterwards she would not allow him near her because she said he was going to kill her. He was only eight years old.
Joseph Belaski testified that testatrix about 1927, upon her return from New York, where she had been staying with the Meskos, said that they wanted to poison her. *Page 19 
Mrs. Revnicki testified to much the same effect as these other witnesses, of Mrs. Ratti's fear of the Meskos, but she added a significant detail: Testatrix was unfriendly with them ever after the time she stayed with them in New York — about 1929. "She said they stole $80,000 from her."
The caveators' case finds some corroboration from witnesses called by the proponents of the will. Mrs. Anne Krisak knew testatrix for ten years, saw her quite frequently. Mrs. Ratti continually said that the Meskos wanted to poison her and she would not live with them. She was very suspicious of everybody. Yet the witness was convinced of her sanity.
Anne's husband, Vandeline Krisak, in 1929 and 1930, used to drive Mrs. Ratti about in her automobile and took her to New York to the Meskos. They warned him that she was crazy and not to believe what she told him. Mrs. Ratti told him that Mrs. Mesko had tried to poison her with powder or something in the coffee; and that the same Mesko boy was going to try to kill her.
Dr. Rudolph Baruch, a specialist in mental diseases, stated his opinion of Mrs. Ratti in answer to a carefully drawn hypothetical question. Mrs. Ratti was suffering from senile psychosis, a deterioration of the mind, with loss of memory and paranoid ideas. In such cases, there is usually some hardening of the arteries of the brain, with a dying out of the nerve tissue of the brain. The condition usually becomes worse as time goes on.
On cross-examination, the doctor stated that two principal bases of his diagnosis were the paranoid idea that she was persecuted by her relatives and the sudden change from a woman, not very religious, to one who was much occupied with religion. The doctor considered it important that Mrs. Ratti felt that not only one person was against her and might injure her, but a group of persons — sister, nephews, nieces, neighbors, and so on. Other symptoms mentioned by him were absent-mindedness, poor memory and delusions of wealth. It is difficult for the court to weigh an opinion based, as is this, upon a group of assumed facts, many of which are not found by the court to be true. There is no satisfactory evidence of loss or impairment of memory, absent-mindedness *Page 20 
or delusions of wealth, or that Mrs. Ratti had not been religiously inclined in her earlier years.
Dr. Wegryn, who examined Mrs. Ratti about 1935, found her blood pressure normal.
I find that Mrs. Ratti told many people that the Meskos or some of them had tried to poison her, and that she believed this was a fact. It appears also that over a long period of years, Mrs. Ratti had had business dealings with her brother-in-law. She said she originally set him up in business. Property which Mrs. Ratti claimed to own stood in the name of Mesko. She stayed with the Meskos in New York for a few months about 1929 and ended the visit after a bitter quarrel over money matters. It was during this visit that she believed the attempt on her life was made. I assume, of course, that there was no such actual attempt. But the proofs do not show that Mrs. Ratti's belief was based on an insane delusion, rather than an attack of indigestion from which, searching in her mind suspiciously, she jumped to the conclusion of poison.
Mrs. Ratti also used words indicating that others might take her life, but I do not find that she made such accusations seriously, or that she believed them to be true. For instance, I gather from Bertha Mimarchenko's testimony that acquaintances would tease and poke fun at her and she would grumble that they would like to kill her for her gold mines. And when Mrs. Gomola offered to call a doctor, Mrs. Ratti said she didn't want one, that he would rob her, he would poison her. When she got tired of having the Schoffner child around her, she used the expression that he was going to kill her.
Also, she used to talk of her gold mines, although she had none except her money in bank and her securities.
Mrs. Ratti's will discloses that she had in memory all her next of kin, for they are named in it. It also indicates that she knew what property she had to dispose of. She undoubtedly comprehended the nature of the act she was doing when she made a will and she understood the effect of the several paragraphs of the will, although she may not have foreseen the possibilities of litigation growing from the residuary clause. *Page 21 
While we may assume that Mrs. Ratti was insane in a medical sense, she still had testamentary capacity, and her will is valid unless its provisions were the result of insane delusions. I am satisfied that this was not the case. Her feeling against the Meskos is not proved to have been founded on such a delusion. Once she had decided to leave them nothing, her gifts to charity and her other gifts follow naturally from the circumstances of testatrix.
 The probate of the will is affirmed. *Page 22